# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| CHARLES HAYDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-4172-CV-C-MJW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On September 24, 2013, the Court held a one-day bench trial. The Court heard evidence presented by plaintiff Charles Hayden, proceeding pro se, and from the United States of America, by and through Assistant United States Attorneys Cari Franke Walsh and Lauren Kummerer. Based upon the evidence submitted at the trial, the Court makes the following findings of fact and conclusions of law.

**Findings of Fact**

1. Plaintiff Charles Hayden alleges he slipped on ice on December 16, 2010, at about 8:10 a.m. in the parking lot of the United States Post Office, 205 South Monroe, Versailles, Missouri.

2. The Versailles Post Office has a slightly sloped, uncovered, customer parking lot on the south side of the building, and an employee lot behind the building where delivery trucks and employees park. The slight slope of the customer parking lot allows rain to drain from the surface of the lot.

3. Below-freezing temperatures were general to the community on December 16, 2010. The temperature was approximately 27 degrees. According to records obtained from the Versailles Wastewater Treatment Facility, a trace amount of precipitation (0.06") in the form of light freezing rain or mist fell in the area between 8:01 a.m. on December 15, 2010, and 9:00 a.m. on December 16, 2010. (Doc. 78, Defendant's Exhibit 14.)

4. Mr. Hayden drove a distance from his home near Stover, Missouri, on the Lake of the Ozarks, to Versailles, Missouri, on the morning of December 16, 2010. He had a court hearing

scheduled that morning at the Morgan County Courthouse on an unrelated case and wanted to stop at the Post Office before court to purchase stamps and mail some letters. Mr. Hayden was aware of the cold temperatures, icy patches, and possible slick road conditions. He knew it was slick outside that morning due to icy conditions because he had worn baseball spikes to walk on his driveway.

5. Heath Murdock operates a company called Murdock Excavating Service, LLC, which is located in Versailles. Postmaster Ilene Jewell (formerly Vaught) retained Murdock Excavating Service to provide snow removal and ice treatment for the Versailles Post Office for the winter season of 2010.

6. At 6:15 a.m. on December 16, 2010, Heath Murdock spread one bag of approximately 50 pounds of Roadrunner ice melt throughout the Versailles Post Office parking lots and sidewalks. Mr. Murdock testified there was no snow or ice on the lot that he had to remove with his blade that morning.

7. The customer parking lot was empty when Heath Murdock spread the ice melt, and he was careful to spread the ice melt throughout the entire parking lot, including each of the parking spaces. Mr. Murdock testified he was positive he spread ice melt in the area where Mr. Hayden later parked his vehicle and fell.

8. The Post Office window opened to the public at 8:30 a.m. on Thursday, December 16, 2010. Heath Murdock had agreed with Postmaster Jewell that he would treat the Post Office parking lots first since postal delivery trucks and employees arrived early in the morning.

9. Shortly before the Post Office window was due to open and because of continuing cold and hazy conditions, and the approximately two-hour passage of time since Heath Murdock spread ice melt, Postmaster Jewell went out to the parking lots and spread additional ice melt by hand at approximately 8:10 a.m.

10. The customer parking lot was empty when Postmaster Jewell began spreading ice melt at about 8:10 a.m. She observed that the parking lot was wet, but she did not see any ice. She also observed residue of ice melt on the parking surface that had been spread earlier that morning by Mr. Murdock. She spread additional ice melt throughout the customer parking lot, including all of the parking spaces. She did not slip as she walked through the lot.

11. After Postmaster Jewell spread ice melt on the customer lot, she spread ice melt on the employee lot and steps that lead to the back dock that are used by postal employees.

12. Postmaster Jewell did not see Mr. Hayden fall, but he stopped her as she was going back into the Post Office carrying the ice melt and a cup that she used to spread it, and said that he wanted to make an incident report. He said he had slipped and fell in the parking lot. Postmaster Jewell asked Mr. Hayden if he needed an ambulance and he replied "no." Mr. Hayden also stated he already had a bad back. Postmaster Jewell testified there were no visible injuries that she observed. Mr. Hayden then stated he had to make a court appearance but would return to make an incident report.

13. Mr. Hayden agrees that he observed Postmaster Jewell applying ice melt to the parking lot at about 8:25 a.m. on December 16, 2010, and stated as follows in his Federal Tort Claims Act (FTCA) Form 95: "Postmaster Vaught (Jewell) stated to me that she contracted a local business to salt the parking lot, one Heath Murdock, Versailles, Mo. However, I noticed Ms. Vaught (Jewell) salting the parking lot by hand at approx. 8:25 AM, Dec. 16th, the day of my injury."

14. Immediately after Mr. Hayden finished making his report about his fall, at about 8:35 a.m., Postmaster Jewell again went out to the customer parking lot and examined the area where Mr. Hayden said he had fallen and took pictures with a disposable camera. Unfortunately, the pictures did not turn out. Postmaster Jewell testified she again observed that the parking surface was wet, but she did not see any visible ice.

15. Mr. Hayden testified he was wearing thick-soled lace-up leather dress shoes at the time he slipped.

16. Ezra Burkholder visited the Versailles Post Office on the morning of December 16, 2010. When he parked his vehicle, he began to walk into the Post Office. He observed Mr. Hayden appear to be getting up from one knee next to Mr. Hayden's truck. Mr. Burkholder did not actually see Mr. Hayden fall and first noticed him when he observed him getting up. He asked Mr. Hayden if he was all right. Mr. Hayden immediately began cursing and complaining about the Post Office to Mr. Burkholder. Mr. Burkholder did not observe any ice on the parking lot and did not find it to be slippery. He testified he had no trouble walking across the lot. Mr. Hayden asked Mr. Burkholder for his telephone number and address. Mr. Hayden came to Mr. Burkholder's workplace to speak with him about the incident and also called him several times on his phone. Mr. Burkholder asked Mr. Hayden to stop contacting him because he did not want

to get involved. Mr. Burkholder later changed his phone number because Mr. Hayden was contacting him too much.

17. The credible evidence clearly demonstrates that ice melt was applied to the Versailles Post Office parking lot by Heath Murdock and Postmaster Jewell using the degree of care that an ordinarily careful person would use under the same or similar circumstances on the morning of December 16, 2010, and that the parking lot was in a reasonably safe condition.

18. The credible evidence reveals Mr. Hayden was wearing thick-soled lace-up dress shoes that morning. Mr. Hayden admitted he did not look down at the parking lot when he exited his vehicle at the Post Office, in spite of the freezing temperatures and obviously damp parking lot.

19. Mr. Hayden alleges his back, hip and right leg were injured as a result of falling when getting out of his truck at the Post Office in Versailles on December 16, 2010. However, no expert testimony was introduced to show that any of these injuries were proximately caused by the fall. Indeed, the evidence introduced at trial reflects that Mr. Hayden has previous injuries to the same areas of his body that were caused by two separate automobile accidents which occurred in 1991 and 2004.

20. Under cross-examination, Mr. Hayden admitted that in 1991 he was rear-ended by a Capital One Electric truck and injured his back. After being treated at the Shawnee Mission Hospital, Mr. Hayden received physical therapy from a chiropractor. He was also involved in a second car accident in 2004 in Camdenton, Missouri. In the second accident, Mr. Hayden was rear-ended at a stoplight near the Camden County Courthouse. In this 2004 accident, he also injured his lower back, right hip, and right leg, the same injuries he is claiming in the instant lawsuit. Mr. Hayden testified he has had chronic lower back pain since his first accident in 1991. He has been diagnosed with an arthritic condition, that is, spondylolisthesis throughout his lower back for many years.

21. Mr. Hayden did not offer any expert testimony at trial to prove that the alleged injuries he received to his lower back, right hip, and right leg on the morning of December 16, 2010, in the parking lot of the Versailles United States Post Office were caused by the fall in the parking lot. Rather, the evidence revealed that the injuries were likely caused by the two previous automobile accidents which had occurred in 1991 and 2004.

## Conclusions of Law

1. Jurisdiction of this case is vested in this Court. 28 U.S.C. § 2401 et. seq.; 28 U.S.C. § 1346.

2. Venue before this Court is proper. 28 U.S.C. § 1402(b).

3. Under the Federal Tort Claims Act, the United States is liable to the same extent as a private party under the same circumstances, based on the law of the state where the incident occurred. 28 U.S.C. § 1346(b)(1); Washington v. Drug Enforcement Admin, 183 F.3d 868, 873 (8th Cir. 1999). Because the event giving rise to this cause of action occurred in the State of Missouri, Missouri substantive law applies. Richard v. United States, 369 U.S. 1, 5 (1962); see, e.g., Overton v. United States, 619 F.2d 1299, 1305 n.5 (8th Cir. 1980).

4. A possessor of land may be liable to an invitee for injuries suffered by a condition on the land, if "B," but only if "B," the possessor, (1) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to the invitee, (2) should expect that the invitee will not discover or realize the danger, or will fail to protect himself against it, and (3) fails to exercise reasonable care to protect him from the danger. Harris v. Niehaus, 857 S.W.2d 222, 225-26 (Mo. banc 1993); Restatement (Second) of Torts Section 343; Rycraw v. White Castle Sys., Inc., 28 S.W.3d 495, 499 (Mo. Ct. App. E.D. 2000).

5. When the hazard claimed is naturally occurring, bad weather, Missouri law provides that a property owner is not an insurer of safety, but simply owes a duty of reasonable care. Milford v. May Dept. Stores Co., 761 S.W.2d 231, 232 (Mo. Ct. App. E.D. 1988).

6. The credibility of witnesses was determined by the Court based on the witnesses' intelligence, their opportunity to have seen or heard the things they testified about, their memories, any motives they had for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony and the extent to which their testimony was consistent with other evidence. See 8th Cir. Civil Jury Instr. § 1.01 (2008).

7. The evidence and testimony from the witnesses at trial clearly supported the Postal Service's contention that it exercised reasonable care to protect its customers from possible icy conditions on its parking lot and on the sidewalks leading to the entrance of the Post Office in Versailles on the morning of December 16, 2010. The undisputed facts negate each element of premises liability, as follows: First, the Postmaster exercised reasonable care to discover and

protect customers and employees from possible icy conditions by hiring a professional contractor, Heath Murdock, to treat the parking lots early, before delivery trucks, employees and customers were expected to arrive. The contractor spread approximately 50 pounds of ice melt in the parking lot at approximately 6:15 a.m. on the morning of December 16, 2010. Mr. Murdock testified he was positive he spread salt in the area where Mr. Hayden alleges he fell down. In addition, Postmaster Jewell testified that at 8:10 a.m., she went outside and walked through the parking area just before the Post Office customer window was due to open at 8:30 a.m. and spread ice melt on the parking lot and sidewalks. She testified she did not observe any ice on the parking lot during that time period. Postmaster Jewell testified the lot was wet and she could still see the ice melt spread earlier that morning by Mr. Murdock. Postmaster Jewell testified she recalled specifically spreading ice melt where Mr. Hayden testified he later fell when he stepped out of his truck that morning. Mr. Hayden also testified he saw Postmaster Jewell spreading ice melt at 8:25 a.m. None of the witnesses testified they had observed ice on the parking lot or sidewalks, either before or after Mr. Hayden fell. The Court finds the above facts clearly demonstrate defendant Post Office exercised reasonable care to protect its customers/invitees from possibly sliding on icy surfaces on its parking lot and sidewalks.

 8. Second, on December 16, 2010, the cold and wet conditions were naturally occurring and general to the community. There was no reason to expect that customers/invitees would not discover or realize that there might be wet or even icy conditions on the streets and on parking lots and sidewalks that morning. Mr. Hayden realized there could be icy patches on the pavement and took precautions as he was driving the morning of December 16, 2010. Mr. Hayden testified that earlier that morning, he had worn baseball spikes in order to safely walk on his driveway because of his concern over possible icy conditions. In spite of the possible icy conditions, Mr. Hayden wore dress shoes that morning rather than boots. Mr. Hayden also testified that he failed to look down at the parking lot when he stepped out of his truck in the parking lot of the Post Office. This failure to take reasonable precautions, in all likelihood, substantially contributed to Mr. Hayden's fall in the parking lot.

 9. Third, the above facts in paragraph seven (7) clearly demonstrate that the Post Office did exercise reasonable care to protect the customers/invitees from harm due to possible icy conditions on its parking lot and sidewalks on the morning of December 16, 2010.

Consequently, Mr. Hayden simply has not met his burden of establishing any element of premises liability.

10. Under Missouri law, in order to prove negligence, a plaintiff must prove the defendant had a duty, breached that duty, that the breach was the proximate cause of the plaintiff's injury, and that the plaintiff actually incurred damages as a result. Bray v. Brooks, 41 S.W.3d 7, 15 (Mo. Ct. App. W.D. 2001). In order to prevail on a negligence claim, the claimant must prove every one of the four elements by substantial evidence, and essential facts cannot rest upon speculation and conjecture. Id.; Courtney v. Emmons, 702 S.W.2d 139, 141 (Mo. Ct. App. E.D. 1985). In short, there is no actionable negligence in the absence of an injury that is the direct result of negligence caused by the defendant. Pietrowski v. Mykins, 498 S.W.2d 572, 579 (Mo. Ct. App. 1973).

11. Mr. Hayden has also failed to prove causation. He did not call any expert witnesses to link his claimed injuries to his back, hip, and right leg from the fall in the parking lot to this particular incident. The matter is substantially complicated by the fact that Mr. Hayden has had two previous automobile accidents, one in 1991 and another in 2004 in which he suffered injuries to the exact same areas of his body. Mr. Hayden admitted he has had chronic back pain since the first incident in 1991. He testified he has been diagnosed with arthritis in his back since that first accident. As a result, Mr. Hayden simply has not met his burden of proving this alleged fall in the parking lot on December 16, 2010, is the cause of the injuries to his back, hip and right leg for which he is currently claiming damages.

12. Under Missouri law, when a plaintiff fails to prove a causal connection between the defendant's alleged negligence and the plaintiff's injuries, the plaintiff may not recover damages. Lidge v. Sears Robuck & Company, 318 F.2d 830, 836 (W.D. Mo. 2004) (business invitee who slipped and fell and claimed knee injury could not recover without expert testimony that the injury was caused by the negligence); see also, Curtin v. Farmers Ins. Co. Inc., No. 09-5008-CV-SW-GAF, 2010 WL 1268037, at *7 (W.D. Mo. April 2, 2010) (expert opinion required to show causation of back pain because claimed back pain was not a visible injury, but a sophisticated injury, and there was some evidence of pre-existing back injury). The mere fact that a claim of injury follows an accident does not necessarily create liability; the plaintiff has the burden of proving a causal connection between the submitted negligence and the injury. Oldaker v. Peters,

869 S.W.2d 94, 100 (Mo. Ct. App. W.D. 1993) (citing Pringle v. State Highway Comm'n, 831 S.W.2d 735, 737 (Mo. Ct. App. S.D. 1992)).

13. Evidence of subjective complaints of pain will not suffice in proving the existence or nature of an alleged injury which is not readily discernible. Pihsiou Hsu v. Mound Yellow Cab Co., 624 S.W.2d 61, 63 (Mo. Ct. App. E.D. 1981) (plaintiff's testimony that she experienced pain and vertigo without expert medical evidence linking the complaints to the accident was insufficient to prove causation). Similarly, evidence of medical expenses will not suffice in proving the existence or nature of an alleged injury which is not readily discernible. Williams v. Jacobs, 972 S.W.2d 334, 340 (Mo. Ct. App. W.D. 1998) (court refused to admit evidence of medical records of treatment for neck pain where plaintiff failed to establish through expert testimony that the claimed neck pain was due to slip and fall, and plaintiff had been involved in a prior accident). The only instance in which evidence of a claimed injury is admissible without expert testimony is where there is a visible injury, or a "sudden onset" of injury that is within the realm of lay understanding. Lidge, 318 F. Supp. 2d at 836. A visible injury is one in which there is evidence of an obvious wound, such as a cut, bruise, or immediate bleeding. Id. (citing Williams v. Jacobs, 972 S.W.2d at 340). Where there is a serious question of pre-existing disability, and its extent, the proof of causation is not within the realm of lay understanding. Lidge, 318 F. Supp. 2d at 836.

14. Here, Mr. Hayden is claiming back, hip and leg pain. Complaints of pain are not "visible" injuries. The evidence presented at trial proved that Mr. Hayden has had two prior injuries to his back, hip and leg from car accidents in 1991 and 2004. As a result, he is asking the Court to speculate about whether his claimed injuries were proximately caused by his alleged slip and fall without providing competent evidence through an expert witness on causation. Even if some negligence could be shown on the part of the United States, Mr. Hayden did not produce any credible evidence that the alleged negligence was the proximate cause of any claimed damages.

IT IS, THEREFORE, ORDERED that judgment is entered in favor of defendant United States of America and against plaintiff Charles Hayden.

Dated this 17th day of October, 2013, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge